# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Information about the location of the cellular telephone assigned call number **(414) 722-3106**, more fully described in Attachment A.

Case No. **18-M-161 (DEJ)**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Information about the location of the cellular telephone assigned call number **(414) 722-3106**, more fully described in Attachment A.

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 26 U.S.C. § 5861 and Title 18 U.S.C. § 922(g).

The application is based on these facts: See attached affidavit.

☒ Delayed notice of _____ days (give exact ending date if more than 30 days: 11/29/2018) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Rick Hankins, ATF
Printed Name and Title

Sworn to before me and signed in my presence:

Date: Sept. 4, 2018

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Honorable David E. Jones, U.S. Magistrate Judge
Printed Name and Title

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41, and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number (414) 722-3106 ("**TARGET TELEPHONE**"), whose service provider is Sprint, a wireless telephone service provider headquartered in Overland Park, Kansas. The subscriber of the **TARGET TELEPHONE** is Corey Miles, and the **TARGET TELEPHONE** is being utilized by Corey Miles. Corey Miles is a suspect in a federal investigation regarding the manufacturing of Molotov cocktails in violation of 26 USC 5861 and unlawful possession of firearms as a convicted felon - 18 USC 922(g). Investigators have obtained federal search warrants for Miles' DNA and hair on two prior occasions pursuant to the aforementioned investigation, but were unable to previously locate Miles because Miles has intentionally evaded law enforcement. Specifically, investigators contacted Miles via cellphone and Miles had agreed to meet with investigators in order for investigators to collect his DNA and hair samples. However, Miles failed to appear and also changed his cellphone number. The probable cause section below will show that Corey Miles is the most probable possessor of the **TARGET TELEPHONE**. If approved, this search warrant will be executed in conjunction with a renewed search warrant for the DNA and hair of Corey Miles.

2. The **TARGET TELEPHONE** is further described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

3. I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

4. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia), as well as the ATF National Academy. That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection.

5. In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have participated in over 250 fire scene examinations and have testified as an expert. Additionally, I have

been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,200 class hours of fire related training. Furthermore, I have been an instructor regarding fire related topics on 38 occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 190 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from August 2015 – August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

6. I have previously applied for and received search warrants for cellphone location data, as well as many other types of search warrants.

7. Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

8. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Based on the facts set forth in this affidavit, there is probable cause to believe that Corey Miles is in possession of the **TARGET TELEPHONE**. There is also

probable cause to believe that the location information described in Attachment B will constitute evidence of Miles' location.

## PROBABLE CAUSE

10. On August 13 and 14, 2016, Milwaukee experienced widespread arson, rioting, and looting in the area surrounding Sherman Park. The rioting and looting was, in part, a response to Milwaukee Police Officer Dominique Heaggan-Brown's shooting of Sylville Smith at the intersection of N. 44th Street and W. Auer Ave.

11. Through an investigation into these arsons, the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereinafter "ATF") discovered that several individuals, known and unknown and including Van L. MAYES, conspired and attempted to use Molotov cocktails[1] to firebomb the Milwaukee Police Department (MPD) District Seven Station located at 3626 W. Fond du Lac Ave. Milwaukee, WI, which is a building used in interstate commerce.

12. On August 23, 2016, ATF was contacted regarding Molotov cocktails located within a dumpster at XX8X N. Sherman Blvd., Milwaukee. Inside of the dumpster, ATF Special Agents located a brown cardboard box holding ten glass bottles containing gasoline with a dark-colored fabric wick inserted into the openings. From training and experience, the agents identified these devices as Molotov cocktails. The Molotov cocktail bottles were labeled as Mike's Hard Lemonade, Everfresh Juice, Mistic

---

[1] A Molotov cocktail is a glass container or bottle that holds a flammable liquid, often gasoline. A wick is inserted into the container or bottle and then lit. The container or bottle is thrown causing fire to spread upon impact.

Juice, and Seagram's Escape Wine Coolers, which had been shipped or transported in interstate commerce.

13. ATF identified Van L. MAYES as a person of interest; and on August 29, 2016, agents conducted a search warrant at MAYES' residence. In his residence, agents located Seagram's Escape Wine Cooler and Everfresh Juice bottles. These bottles were the same brands of the bottles that were used in the construction of the Molotov cocktails recovered by agents on August 23.

14. On August 30, 2016, ATF agents conducted a search at an apartment located at XX8X N. Sherman Blvd. During the search, agents located evidence of Molotov cocktails: ripped dark-colored fabric consistent with the fabric found in the recovered Molotov cocktails; two partially empty gas cans inside of a bedroom; a gas can nozzle within the apartment's yard; a Mike's Hard Lemonade bottle; and Seagram's Escape and Mistic Juice bottle caps, which were consistent with the types of bottles used to construct the recovered Molotov cocktails.

15. On September 20, 2016, ATF Agents informed MAYES that bottles that came from MAYES' residence may have been used to manufacture Molotov cocktails. MAYES said that the bottles came from his residence so his DNA would be on them. MAYES said that he drank from Everfresh Juice and Seagram's Escape bottles.

16. From the investigation, ATF agents discovered that MAYES was a coordinator of "Program the Parks," which was an organization focused on mentoring for Sherman Park teenagers.

17. Source of Information-1 (SOI-1) stated that a few days after the rioting on or about August 15, MAYES, C.E., Corey Miles, B.H., and others met by the burned down BP Gas Station in Sherman Park and discussed firebombing the police station located at 3626 W. Fond Du Lac Ave. The group agreed to meet at the apartment located at XX8X N. Sherman Blvd. to further the plan. XX8X N. Sherman Blvd is approximately a half of a mile from the police station located at 3626 W. Fond Du Lac Ave. SOI-1 stated that MAYES brought gas cans and glass bottles to the location. MAYES, Corey Miles, and M.W. began to manufacture the Molotov cocktails. SOI-1 said some of the bottles were juice bottles, and there was a black coat that was ripped and used for the Molotov cocktail wicks. SOI-1 said D.M. acted as lookout while the Molotov cocktails were being manufactured. The finished Molotov cocktails were placed into a cardboard box. SOI-1 saw B.H. and others bring a bag of rocks to XX8X N. Sherman Blvd. B.H. was organizing Sherman Park teenagers and telling them about the plan to firebomb the police station. SOI-1 said the plan to attack the police station did not happen because Corey Miles thought too many people knew of the plan.

18. In February 2017, Source of Information-2 (SOI-2) stated that on or about August 15, he was at XX8X N. Sherman Blvd., and there were approximately twenty adults and teenagers there. SOI-2 identified D.M. and a "large dude" as the people who were manufacturing Molotov cocktails when SOI-2 was there. D.M. asked SOI-2 if he would throw rocks at police so others could firebomb the police station with the Molotov cocktails. SOI-2 stated that the adults voted not to firebomb the police station that night. SOI-2 saw the bag of rocks and the box of Molotov cocktails placed into C.M's car.

19. In February 2017, Source of Information-3 (SOI-3) stated that on or about August 15, SOI-3 met B.H. to discuss some events that followed the evening of the fires. B.H. told SOI-3 that police recovered Molotov cocktails and gas cans from XX8X N. Sherman Blvd. B.H. told SOI-3 that they "covered up" the gas cans by saying that they were used for a generator.

20. In November 2016, Source of Information-4 (SOI-4) stated that after the shooting of Sylville Smith on August 13, SOI-4 heard MAYES say that Sylville Smith needs justice. SOI-4 stated that on or about August 15, s/he went to XX8X N. Sherman Blvd. with about twenty other adults and teenagers. While at the location, SOI-4 saw MAYES, C.E., and B.H. SOI-4 saw MAYES sitting next to a black fabric bag filled with rocks. Also next to MAYES, SOI-4 saw a box with several empty glass bottles. SOI-4 said that MAYES was wearing gloves and filling the bottles with gasoline, dipping ripped shirts into a bowl of gasoline, and placing the soaked fabric into the tops of the bottles. SOI-4 said some of the bottles were Everfresh Juice bottles. At this gathering, SOI-4 heard adults discussing a plan to firebomb the MPD district police station located at 3626 W. Fond Du Lac Ave. SOI-4 stated that s/he and others drove by the police station located at 3626 W. Fond Du Lac Ave. and saw police on the building's rooftop. SOI-4 and the others went back to XX8X N. Sherman Blvd. and told the others that the police were ready for them. SOI-4 stated that because of the heavy police presence, the group decided against attacking the police station that night.

21. From the investigation ATF agents discovered that some of the youth who participated in MAYES' "Program the Parks" were present for the manufacturing of the Molotov cocktails and were asked to throw rocks at police.

22. From electronic evidence recovered from MAYES' residence during the August 29 search warrant, ATF discovered several videos recorded by MAYES during the rioting on August 13 and 14.

23. In Video 1 from MAYES' cellphone, he recorded himself during the civil unrest on August 13. During this video, a large group is seen in front of a line of Milwaukee Police Officers. In the video, MAYES is heard saying, "Where the rocks at? Who got the rocks?" and "Fuck you all! Punk ass cops. Getting they ass rocked!"

24. In Video 2 recovered from MAYES' cellphone, he recorded himself during the civil unrest on August 13. In this video, MAYES has his face covered with a mask and is heard saying, "They killing their ass with these motherfucking rocks. Rocking their shit. Shit going down."

25. In Video 3 recovered from MAYES' cellphone, he recorded a group of individuals who were damaging a police squad car during the rioting.

26. ATF also viewed videos from MAYES' Facebook account.

27. On August 14, 2016, at approximately 12:33 a.m., MAYES posted a Facebook video that captured MAYES walking near the intersection of Fond du Lac and Burleigh. In that video, MAYES stated that Milwaukee rioting "[T]urned into Baltimore. It turned into Ferguson. And it was necessary." In this same video, MAYES is heard

describing the police district station located at 3626 W. Fond Du Lac Ave. as one of the "worst police departments, District Seven."

28. On August 15, 2016, at approximately 7:12 p.m., MAYES posted a collage of photos to his Facebook page of Milwaukee Police Officer Dominique Brown Heaggan with the following statement: "Officer Dominique Brown Heaggan killed #SyvilleSmith. Yall know what to do...Let's get this out!!! #Fuckem #FTP." FTP is an acronym for "fuck the police."

29. Further examination of MAYES' Facebook records showed that MAYES sent a private message at approximately 9:13 p.m. on August 15 to a person believed to be his sister, and the message stated, "Fa sho... Shit bout to get real tonight. Just so u know."

30. Also on August 15, MAYES posted a video to Facebook at approximately 9:50 p.m. in which he announced to people walking near Sherman Park, "It's about to get real. Y'all are leaving. Y'all ain't going to see how real it's going to get."

31. MAYES' cellphone records from August 15, 2016 show that his cellphone, at time that the Molotov cocktails were being manufactured, was utilizing a cell tower that provided coverage in the area of XX8X N. Sherman Blvd.

32. A Molotov cocktail is a destructive device and a firearm.[2]

---

[2] Under 18 U.S.C. § 921(a)(3, 4), the definition of "firearm" includes a "destructive device", which includes: "(i) any explosive, incendiary, or poison gas (ii) bomb, (iii) grenade, (iv) rocket having a propellant charge of more than four ounces, (v) missile having an explosive or incendiary charge of more than one-quarter ounce, (vi) mine, or (vii) device similar;... and any combination of parts either designed or intended for use in converting any device into a destructive device...."

33. MAYES is prohibited from possessing firearms because he has a felony conviction from Milwaukee County Case 2005-CF-2586 (Drive/Operate a Vehicle Without Consent). That conviction remains of record and unreversed.

34. An inquiry into the National Firearm Registration and Transfer Record revealed that Charles N. Edwards, Derrick Madlock, Corey Miles, Bernice Hart, and Van Mayes were not of record.

35. On April 24, 2017, I was notified by the ATF Forensic Laboratory of the following findings: a male DNA profile was located on scissors found on the ground outside Edwards' apartment; a female DNA profile was found on a Mike's Hard Lemonade bottle cap located on Edwards' property; a second female DNA profile found on gas can #1 located in Edwards' bedroom; a third female DNA profile found on gas can #1 located in Edwards' bedroom; and a second male DNA profile found on gas can #2 located in Edwards' bedroom. Furthermore, ATF Forensic Laboratory located human hairs or human hair fragments on the cloth believed to be used to manufacture the Molotov cocktails. All of these human hairs were suitable for DNA analysis and some may be suitable for microscopical comparison.

36. On May 25, 2017, the Honorable Magistrate Judge William E. Duffin signed this warrant for Corey Miles' hair and DNA, however, ATF agents were unable to locate Miles' within the time limits. On June 29, 2017, the Honorable Magistrate Judge David E. Jones signed this warrant for Corey Miles' hair and DNA, however, ATF agents were unable to locate Miles' within the time limits.

37. As of August 27, 2018, ATF agents believe that they have now identified the **TARGET NUMBER** as possessed by Corey Miles.

38. ATF confirmed with personnel at Miles' employer, Rexnord, that Miles is on an extended leave of absence. The employer further provided Miles' cellphone number as 414-722-3106 (**"TARGET TELEPHONE"**). That number was current for Miles' as of July 19, 2018. A query of cellphone number 414-722-3106 (**"TARGET TELEPHONE"**) in TLO, which is a public records database, showed that cellphone number is listed to Corey Miles.

39. Affiant believes that there is probable cause that Miles' DNA is evidence of a crime, and the data requested in this search warrant for the **"TARGET TELEPHONE"** will assist in locating Miles and that evidence.

40. Based on my training and experience, I know that by comparing the DNA collected from distinct items believed to be worn or touched with the DNA of a suspect, it is possible to determine whether the suspect is likely to be the person who wore or touched an item.

41. Your affiant intends that a buccal swab DNA kit be used to obtain the DNA buccal swab from Miles. Your affiant and/or another law enforcement officer involved in this investigation will secure a buccal swab by swabbing the inside of Miles' mouth for saliva and cells until an adequate sample is obtained. Your affiant and/or another law enforcement officer involved in this investigation will secure Miles' hair by brushing and plucking hairs from Miles' head and pubic area as is the process directed by the ATF Forensic Laboratory.

42. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

43. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the **TARGET TELEPHONE** by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's network or with such other reference points as may be reasonably available.

44. Based on my training and experience, I know that Sprint can collect cell-site data about the **TARGET TELEPHONE.**

## AUTHORIZATION REQUEST

45. Based on the foregoing, I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

46. I further request, pursuant to 18 U.S.C. § 3103a(b), and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property or any wire or electronic communication. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any electronic information (non-content) to obtain the authorized location information, there is reasonably necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2). This application and affidavit does not seek authority to intercept or seize the content of any communications.

47. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all

information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

48. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours.

49. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, remain sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation and the safety of those who have provided information to the ATF.

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number (414) 722-3106 (the "**TARGET TELEPHONE**"), whose wireless service provider is Sprint a company headquartered in Overland Park, Kansas. The subscriber of the **TARGET TELEPHONE** is Corey Miles.

2. Information about the location of the **TARGET TELEPHONE** that is within the possession, custody, or control of Sprint including information about the location of the cellular telephone if it is subsequently assigned a different call number.

# ATTACHMENT B

## Particular Things to be Seized

All information about the location of the **TARGET TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **TARGET TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property or any wire or electronic communication. In approving this warrant, the Court finds reasonable necessity for the delay of notice. *See* 18 U.S.C. § 3103a(b)(2).